UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS MAURICIO TAMEZ, | § § § § | |
| Plaintiff | | |
| vs. | § § § § § § § § § § | CIVIL ACTION NO. 4:13-cv-3777 |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, INC., TRANS UNION, LLC and COLLECTO, INC dba EOS/CCA, | | JURY DEMAND |
| Defendants | | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Carlos Mauricio Tamez, Plaintiff in the above-numbered and styled case, complaining of and against Collecto, Inc, dba ESO/CCA, Experian Information Solution, Inc., Equifax Information Services, Inc., and Trans Union, LLC, and for cause of action would respectfully state the following:

**I. INTRODUCTION**

1.      This is an action for damages brought by Plaintiff, Carlos Mauricio Tamez, an individual consumer, alleging that Defendant Collecto, Inc. dba EOS/CCA (hereinafter "EOS/CCA") has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (hereinafter "FDCPA"), by continually attempting to collect a debt for which Plaintiff was never billed and was therefore never delinquent.   EOS/CCA has also violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA") by failing to comply with its duties and obligations as a furnisher of information upon notice of Plaintiff's

dispute. Plaintiff sent the Defendants definitive proof that he was never billed for the account and should never have been given a delinquent status and should never have gone into collections. Defendants Experian Information Solutions, Inc. (hereinafter "Experian"), Equifax Information Services, Inc. (hereinafter "Equifax"), Trans Union, LLC (hereinafter "Trans Union") violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy when preparing credit reports concerning Plaintiff and by failing to conduct a reasonable reinvestigation of the subject account following Plaintiff's dispute of the subject account on his credit reports.

## II.   JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) of the FDCPA, 15 U.S.C. § 1681p of the FCRA, and 28 U.S.C. § 1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is properly laid pursuant to 28 U.S.C. § 1391(b).

## III.   PARTIES

3. Plaintiff, Carlos Mauricio Tamez, (hereafter, the "Plaintiff" or "Mr. Tamez") is an individual residing in The Woodlands, Texas.

4. Experian is a foreign corporation, duly authorized and qualified to do business in the State of Texas. Experian maintains a business address at 475 Anton Blvd., Costa Mesa, California 92626. Experian may be served by serving its registered agent CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

5. Trans Union is a foreign corporation, duly authorized and qualified to do business in the State of Texas. Trans Union maintains a business address at 555 West Adams Street, Chicago, Illinois 60661. Trans Union may be served by serving its registered agent The Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6. Equifax is a foreign corporation, duly authorized and qualified to do business in the State of Texas. Equifax maintains a business address at P.O. Box 4081, Atlanta, Georgia 30302. Equifax may be served by serving its registered agent Corporation System Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7. EOS/CCA is an assumed name for Collecto, Inc., a foreign corporation engaged in the business of collecting debts in this state with a principal place of business at 700 Longwater Drive, Norwell, Massachusetts 02061. The principal purpose of EOS/CCA is the collection of debts using the telephone and mail, and the Defendant EOS/CCA regularly attempts to collect debts alleged to be due another. EOS/CCA regularly furnishes information to consumer reporting agencies related to the debts it attempts to collect. EOS/CCA may be served by serving its registered agent CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

8. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3) and by the FCRA, 15 U.S.C. § 1681a(c).

9. Defendants Trans Union, Experian, and Equifax are "credit reporting agencies" as defined by the FCRA, 15 U.S.C. § 1681(a)(f) and are collectively referred to hereafter as the "credit reporting agency defendants."

10. Defendant EOS/CCA is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692(a)(6) and a furnisher of information as that term is used in the FCRA, 15 U.S.C. § 1681s-2.

## IV. FACTUAL ALLEGATIONS

### A. History of the CenturyLink Account at Issue

11. In or about 2012, while residing in an apartment complex in Phoenix, Arizona, Plaintiff had a contract with CenturyLink for residential internet and digital cable services. In or around November 2012, Plaintiff terminated the CenturyLink account for services for his Arizona residence.

12. On or about November 19, 2012, Plaintiff received a final statement from CenturyLink showing a credit balance in his favor of $35.25, indicating that he had overpaid his account. On or about December 17, 2012, Plaintiff deposited the check issued by CenturyLink that he received for the credit from his CenturyLink account.

13. Unbeknownst to Plaintiff, in or around November 2012, CenturyLink mistakenly billed Plaintiff under a new account number in the amount of $245.93. Sometime thereafter, also unbeknownst to Plaintiff, the CenturyLink account was sent to EOS/CCA for collections.

### B. Plaintiff's Futile Attempts to Dispute the Erroneous Account

14. On or about April 8, 2013, Plaintiff moved to Texas. In or about May 2013, while in the market to purchase a home, Plaintiff learned that EOS/CCA had reported the CenturyLink account to the credit reporting agency defendants as a delinquent account.

15. On or about May 20, 2013, Plaintiff learned from a prospective mortgage lender that the CenturyLink collection account reported by EOS/CCA was dragging down his credit score low enough that he did not qualify for conventional financing.

16. Other than the Century/Link account reported by EOS/CCA there were no other derogatory trade lines appearing on Plaintiff's credit bureau reports with Trans Union, Experian or Equifax. That trade line indicated a past due amount of $235 for account number 21694073, listing CenturyLink as the original creditor.

17. Plaintiff intended to purchase a home with 5% of the purchase price as a down payment through conventional financing and assuming his credit scores were above 680. In the event that Plaintiff's credit scores were below 680, Plaintiff was prepared to make a 10% down payment, although that was not his preference.

18. Initially, Plaintiff communicated with EOS/CCA in an effort to have the erroneous trade line removed from his credit bureau reports. From the initial telephone communication with EOS/CCA, Plaintiff understood that he would need to communicate with CenturyLink to sort out the problem, and that Plaintiff would need provide some documentation to EOS/CCA so that it would remove the derogatory trade lines from Plaintiff's credit reports with Trans Union, Experian and Equifax.

19. On or about June 13, 2013, Plaintiff communicated with CenturyLink and disputed the account at issue. A service representative by the name of "Justin S." at CenturyLink explained that it had mistakenly generated a new account and that CenturyLink had failed to notify Plaintiff of the balance before sending the account to collections with EOS/CCA.

*Plaintiff's Original Complaint*
Page 5

20. In response to Plaintiff's dispute, CenturyLink sent an email to Plaintiff acknowledging and explaining its billing error. Specifically, CenturyLink's email, dated June 13, 2013, states in pertinent part:

> This letter is to inform you that when your account xxx-xxx-1011-635 that had internet and DTV bundle were closed that the DTV account did not got [*sic*] unbundled properly. It created a different account xxx-xxx-xxxx-904 ***we appologize [sic] that you were not informed sooner about the account before it was sent to collections. You were not given proper notification to get this billing corrected again before it was sent to collections.*** When the account xxx-xxx-1011 [*sic*] was closed you did receive a credit for over payment you were also told by agent that account is closed and you are in good standings with final bill dated November 19th [2012] and credit check issued with November 28th [2012] date. The account that was created xxx-xxx-0045 has a bill date of November 1 [2012] and a final bill November 6 [2012] with a balance of $235.93 with DTV charges, with this account being created ***with billing glitch*** this left that payment we made to DTV outstanding ***which caused this error for you. The intention of this letter is to try to get any negative action against your credit reversed*** since you said that a payment of $235.93 would be made to pay off debt if this issue is resolved.   (Emphasis added.)

21. On or about June 14, 2013, Plaintiff sent a fax to EOS/CCA with notification that CenturyLink had sent his account to EOS/CCA in error. Plaintiff sent a written request to EOS/CCA, prominently marked "URGENT" requesting that it remove the collection account from his credit report "as soon as possible," that it "expedite this matter," and that "time is of the essence." Plaintiff attached a copy of the CenturyLink email in the fax he sent to Defendant EOS/CCA.

22. On or about June 17, 2013, Plaintiff followed up his fax to EOS/CCA with a telephone call. He spoke with a woman who identified herself as "Asia" who verified that EOS/CCA had received Plaintiff's faxed dispute. Asia indicated that EOS/CCA had reached out to CenturyLink for clarification on the account. Despite the confirmation

*Plaintiff's Original Complaint*
Page 6

from CenturyLink of the account errors, Asia indicated that the EOS/CCA collection account was still valid.  She estimated that EOS/CCA would have a final response within three to five days.

## C. Plaintiff's Futile Attempts to Have the Erroneous Trade Line Removed from His Credit Bureau Reports

23. On or about June 24, 2013, Plaintiff submitted disputes electronically to Trans Union, Experian, and Equifax asking that each credit bureau remove the EOS/CCA trade line from Plaintiff's credit bureau reports.

24. The credit reporting agency defendants failed and refused to respond to the Plaintiff's dispute.  On or about July 2, 2013, Plaintiff submitted a written dispute Trans Union, Experian, and Equifax by certified mail, return receipt requested.  In support of his dispute, Plaintiff explained the history of his dispute with CenturyLink and EOS/CCA.  Plaintiff's July 2, 2013 letter to each of the credit reporting agency defendants, states in pertinent part:

> I had CenturyLink service for a few months in the fall of 2012.  I disconnected the service and received [a] final bill on November 19, 2012 showing a credit balance of $35.25.   I subsequently received a check from CenturyLink in that amount, which I deposited into my bank account.  I was told over the telephone on multiple occasions by CenturyLihnk [*sic*] representatives to disregard any invoices showing a balance owing.  I was assured that a final bill would issue and that there would be a final netting applied.
>
> Unbeknownst to me, there apparently was a billing glitch on CenturyLink's side that showed a balance of $235, but I was told that the Nov. 19 bill was the final bill.   Shortly thereafter, the account was referred to collection.
>
> I was never given a proper explanation of the $235 owed or a reasonable amount of time to pay the bill.  The matter should have never been sent to collection.  I am enclosing documentation supporting my version of the

story as well as an email from CenturyLink admitting that there was a billing error on their part and that this account should not be reflected negatively on my credit report   Despite my providing this documentation to EOS/CCA, they have refused to remove the history from my credito [*sic*] report....

25. Plaintiff attached the following documents to his dispute letter to the credit reporting agency defendants:

    a)   a copy of the final statement he received from CenturyLink indicating an account credit of $35.25;

    b) a printout of his personal bank's transaction detail showing a copy of the CenturyLink check deposit posted on December 17, 2012; and

    c) a copy of the June 13, 2013 email he received from CenturyLink admitting that the account had been sent to EOS/CCA in error.

## D.   The Credit Reporting Agency Defendants Refuse to Correct Plaintiff's Reports

26.   By letter dated July 19, 2013, Equifax responded to Plaintiff's dispute by informing him that it refused to remove the subject account from his consumer report.

27.   By letter dated August 8, 2013, Experian responded to Plaintiff's dispute by informing him that it refused to remove the subject account from his consumer report.

28.   In a report dated August 6, 2013, Trans Union notified Plaintiff that it refused to remove the subject account from his consumer report.

29.   On or about August 14, 2013, Plaintiff once again reviewed his Trans Union consumer report and discovered that the subject account listed by EOS/CCA had not been removed from his consumer report.

## E. Plaintiff Lacked Any Effective Alternatives to Improve His Credit Score Before Closing

30. Plaintiff's credit scores, as reported by the credit reporting agency defendants, dropped significantly because of the EOS/CCA trade line.

31. On or about November 1, 2012, Plaintiff's credit scores were listed as follows:

    a) Equifax 754
    b) Experian 739
    c) Trans Union 748

32. On or about February 1, 2013, Plaintiff's credit scores remained high, as follows:

    a) Equifax 759
    b) Experian 773
    c) Trans Union 770

33. On or about May 1, 2013, Plaintiff's credit scores dropped sharply and were listed as follows:

    a) Equifax 640
    b) Experian 635
    c) Trans Union 658

34. On or about August 1, 2013, Plaintiff's credit scores were still very low and were listed as follows:

    a) Equifax 658
    b) Experian 662
    c) Trans Union 673

35. Plaintiff's mortgage broker, Raphael Bangiyev, suggested that Plaintiff communicate with Mike Burnett, Personal FICO® Score Consultant and Credit Repair

Expert at Pinnacle Consulting Group. Mr. Burnett would have filed a dispute on Plaintiff's behalf with the Defendant credit bureaus, but since Plaintiff had already made the written disputes, there was nothing else Mr. Burnett could do to assist Plaintiff.

36. With his closing set for August 2, 2013, Plaintiff contemplated paying the erroneous account, despite the fact he had no proof that he ever owed CenturyLink any money, rather because he wanted to enjoy better financing rates on his mortgage. However, through discussions with his mortgage broker, Plaintiff learned that if he paid the disputed amount, the trade line would not be removed but would instead be reported as a paid delinquent account; in other words, the result would not have markedly improved his credit score. Plaintiff understood that the only way to restore his credit score was for the EOS/CCA trade line to be deleted.

37. On or about August 2, 2013, concerned that he would lose the home of his dreams to another buyer, Plaintiff closed on the purchase of his new home with financing from AmeriFirst Financial, Inc. In connection with that mortgage application, Trans Union, Experian and Equifax reported the disputed EOS/CCA account to AmeriFirst Financial, Inc. and to Plaintiff's mortgage lender. The derogatory trade line dropped the Plaintiff's credit score by approximately 115 points, which resulted in the Plaintiff paying a higher down-payment, an increased interest rate on his mortgage, increased mortgage insurance, embarrassing the Plaintiff and causing him emotional distress.

**V. CLAIM FOR RELIEF UNDER FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b) THE DEFENDANTS' FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY OF INFORMATION REPORTED**

38. Plaintiff incorporates paragraphs 1-37 above.

39. Trans Union, Experian and Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced numerous consumer reports regarding Plaintiff, as that term is defined in the FCRA, 15 U.S.C. § 1681a(d).

40. Such reports contained the false and derogatory information about the subject disputed account. Trans Union, Experian and Equifax knew, or should have known, that the reports contained erroneous information.

41. Trans Union, Experian and Equifax willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information they reported to numerous third parties pertaining to the Plaintiff or in credit reports supplied to third parties, in violation of the FCRA, 15 U.S.C. § 1681e(b).

42. In the alternative, Trans Union, Experian and Equifax negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information they reported to numerous third parties pertaining to the Plaintiff or in credit reports supplied to third parties, in violation of the FCRA, 15 U.S.C. § 1681e(b).

43. Plaintiff suffered actual economic and emotional damages as a result of the credit reporting agency defendants' violations of the FCRA and they are therefore liable to the Plaintiff for actual, statutory and punitive damages in an amount to be determined by the trier of fact, as well as Plaintiff's reasonable attorney fees and costs pursuant to the FCRA, 15 U.S.C. §§ 1681o and 1681n.

## VI.  CLAIMS FOR RELIEF UNDER FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i: THE DEFENDANTS' FAILURE TO CONDUCT A PROPER REINVESTIGATION

44. Plaintiff incorporates paragraphs 1-37 above.

45. Trans Union, Experian and Equifax violated 15 U.S.C. § 1681i by negligently, or willfully, failing to properly reinvestigate, delete and/or permanently suppress inaccurate information appearing in the Plaintiff's consumer reports as contained in its files pertaining to him.

46. As a direct and proximate result of such conduct, Plaintiff suffered actual damages as set forth herein.

47. Trans Union, Experian and Equifax are liable to Plaintiff for the actual and statutory damages he has sustained by reason of their willful noncompliance, in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 15 U.S.C. §§ 1681o and 1681n(a)(1) and (3).

48. In addition, Trans Union, Experian and Equifax are liable to Plaintiff for punitive damages for their willful violation of 15 U.S.C. 1681i, in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 1681n(a)(2) and (3).

49. Trans Union, Experian and Equifax are liable to Plaintiff for the actual damages he has sustained by their negligent failure to comply with 15 U.S.C. 1681i, in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 15 U.S.C. §§ 1681o.

### VIII. CLAIMS FOR RELIEF UNDER FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681s-2(b): FAILURE OF EOS/CCA TO CONDUCT A PROPER REINVESTIGATION

50. Plaintiff incorporates paragraphs 1-37 above.

51. EOS/CCA failed to conduct a proper re-investigation with regard to the accuracy and completeness of the CenturyLink account after receiving notice of Plaintiff's dispute to the defendant credit reporting agencies, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

52. As a direct and proximate result of such conduct, Plaintiff suffered actual damages as set forth herein.

53. EOS/CCA is liable to Plaintiff for the actual and statutory damages he has sustained by reason of willful noncompliance, in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 15 U.S.C. §§ 1681o and 1681n(a)(1) and (3).

54. In addition, EOS/CCA is liable to Plaintiff for punitive damages for its willful violation of 15 U.S.C. 1681s-2(b)(1)(A)-(E), in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 1681n(a)(2) and (3).

55. EOS/CCA is liable to Plaintiff for the actual damages he has sustained its negligent failure to comply with 15 U.S.C. § 1681s-2(b), in an amount to be determined by the trier of fact, together with his reasonable attorney fees and he may recover therefore pursuant to 15 U.S.C. §§ 1681o.

### IX. CLAIM FOR RELIEF UNDER FAIR DEBT COLLECTION PRACTICES ACT

56. Plaintiff incorporates and reasserts paragraphs 1-37 above.

57. Defendant EOS/CCA violated the FDCPA by falsely reporting to the credit reporting agency defendants that Plaintiff owed a debt, in violation of 15 U.S.C. 1692e(2)(A).

58. Defendant EOS/CCA violated the FDCPA by falsely reporting to the credit reporting agency defendants that plaintiff owed a debt which he did not owe 15 U.S.C. 1692e(10).

59. Defendant EOS/CCA violated the FDCPA by repeatedly attempting to collect the $235 CenturyLink account from Plaintiff when that amount was not expressly authorized by the agreement creating the alleged debt, in violation of 15 U.S.C. § 1692f(1).

60. As a result of its violations of the FDCPA, Defendant EOS/CCA is liable to the Plaintiff for a judgment for his actual and statutory damages, and costs and attorney fees.

## X. JURY DEMAND

61. Plaintiff demands a jury trial.

## XI. PRAYER

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1), 15 USC § 1681n(a)(1)(A) and/or 15 USC § 1681o(a)(1);

B. Statutory damages against EOS/CCA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    C.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), 15 USC § 1681n(a)(3) and 15 USC § 1681o(a)(2) including fees in the event of appeal; and

    D.    Awarding the plaintiff punitive damages pursuant to 15 USC § 1681n(a)(2);

    E.    Such other and further relief as may be just and proper.

Respectfully submitted,

/s/   Dana Karni  
DANA KARNI  
KARNI LAW FIRM, P.C.  
State Bar No. 24044379  
S.D. Texas Bar No. 592484  
4635 Southwest Freeway, Suite 645  
Houston, Texas 77027  
Telephone: (713) 552-0008  
Facsimile: (713) 454-7247  
DKarni@TexasConsumerDebt.com

/s/   James B. Fishman  
JAMES B. FISHMAN (jbf 8998)  
FISHMAN & MALLON, LLP  
305 Broadway, Suite 900  
New York, NY   10007  
Telephone: (212) 897-5840  
Facsimile: (212) 897-5841  
JFishman@FMLawoffices.net  
(pending *pro hac vice*)

ATTORNEYS FOR PLAINTIFF